**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2436
_____

ANN MARIE MAHADEO,
A/KA/ ANN MARIE SAMAROO;
RAMPAT MAHADEO,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A088-221-110 & A099-556-165)
Immigration Judge:  Honorable Eugene Pugiliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 21, 2011
Before:  SLOVITER, GREENAWAY, JR. and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 22, 2011 )
_____

OPINION
_____

PER CURIAM

      Anne Marie and Rampat Mahadeo petition for review of a final order of removal.

For the reasons discussed below, we will dismiss in part and deny in part the petition for

review.

The petitioners, husband and wife citizens of Trinidad and Tobago, were charged as removable under 8 U.S.C. § 1227(a)(1)(B). Both conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). At a hearing before an immigration judge ("IJ"), Rampat testified that he had been injured by his Hindu family members and members of their church because of his conversion to Christianity and that those family members had likewise harassed Anne Marie. He testified further that he reported one incident to the Trinidadian police who declined to intervene and explained that it was a family matter. The petitioners claimed that because of their mistreatment at the hands of Rampat's family they feared persecution based on their religion should they return to Trinidad and Tobago.

The IJ denied the petitioners' applications, and they appealed to the Board of Immigration Appeals ("BIA"). There, they claimed that the IJ ignored their evidence of country conditions in Trinidad and Tobago, made no determination of their testimony's credibility, and denied their asylum applications because he failed to consider general conditions facing Christian minorities in Trinidad and Tobago. The BIA noted that the petitioners did not proffer any documentary evidence of country conditions in Trinidad and Tobago and determined that the Government's evidence, a State Department Human Rights Report on Trinidad and Tobago, was properly considered. The Board also noted that the IJ had made a credibility determination; in fact, the IJ explicitly found that the petitioners testified credibly. The BIA also noted that the IJ had no occasion to consider

general conditions relating to their asylum applications as the applications were untimely and pretermitted.  The petitioners did not challenge their applications' timeliness on appeal.  Accordingly, the Board dismissed their appeal.

The petitioners have raised five claims before this Court: (1) the BIA erred in affirming the IJ's decision to pretermit their asylum applications; (2) the petitioners' asylum claim warranted a favorable exercise of discretion; (3) the petitioners are eligible for asylum because they have demonstrated past persecution and a well-founded fear of future persecution; (4) the BIA erred in finding that the petitioners did not meet their burden to establish a claim for withholding of removal; and (5) the petitioners qualify for relief under CAT because they are likely to be tortured upon return to Trinidad and Tobago. [1]

## II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1).  See Abdulai v. Ashcroft, 239 F.3d 542, 548 (3d Cir. 2001).    Prior to raising an issue for judicial review, a petitioner must exhaust all administrative remedies

---

[1] The petitioners' brief appears to have been haphazardly cobbled together from other unrelated filings.  Because of this lax preparation, the brief repeatedly misidentifies the petitioners' country of origin as either Bangladesh or Albania.  See, e.g. Petitioners' Brief at 15 ("[T]he Petitioners did not suffer persecution in Bangladesh . . ."); id. at 16 ("a reasonable person in Petitioner's [sic] circumstances would fear persecution upon return to Bangladesh."); id. at 21 ("they will suffer torture if returned to Albania.").  Any arguments relating either to Bangladesh or Albania, if taken at face-value, would be beyond our jurisdiction because they were never raised before the BIA.  In the interest of fairness, we will not saddle the petitioners with such a strict reading of the error-ridden submissions prepared by their attorney, Salim Sheikh, and shall instead treat each of these statements as referring to their home

3

available as of right regarding that issue. 8 U.S.C. § 1252(d)(1); <u>Sandie v. Att'y Gen.</u>, 562 F.3d 246, 250 n.1 (3d Cir. 2009). This is a jurisdictional requirement. <u>See</u> <u>Hoxha v. Holder</u>, 559 F.3d 157, 159 n.3 (3d Cir. 2009).

We review factual findings, including any credibility determinations, under a substantial evidence standard. <u>See</u> <u>Cao v. Att'y Gen.</u>, 407 F.3d 146, 152 (3d Cir. 2005). Under that standard, we must uphold the BIA's decision unless the evidence not only supports a contrary conclusion, but compels it. <u>See</u> <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 483-84 (3d Cir. 2001). We exercise plenary review over conclusions of law, subject to established principles of deference on agency review. <u>See</u> <u>Sioe Tjen Wong v. Att'y Gen.</u>, 539 F.3d 225, 231 (3d Cir. 2008).

### III.

The petitioners' present claim that the untimeliness of their asylum applications should be excused was never raised before the BIA. It is therefore unexhausted and we lack jurisdiction to address it. <u>Hoxha</u>, 559 F.3d 159 n.3. We also lack jurisdiction over petitioners' claim that they warranted asylum in the exercise of discretion. <u>See</u> <u>Mendez-Moranchel v. Ashcroft</u>, 338 F.3d 176, 178 (3d Cir. 2003). Accordingly, we will dismiss these claims on that basis.

The crux of the petitioners' remaining claims is that the harm inflicted by Rampat's family constituted past persecution and demonstrated that they would be tortured upon returning to Trinidad and Tobago. For harm to constitute persecution, it

country of Trinidad and Tobago.

4

must have been inflicted at the hands of the government or forces the government is unable or unwilling to control. Sheriff v. Att'y Gen., 587 F.3d 584, 589 (3d Cir. 2009). In this case, the harm the petitioners allege constituted persecution was inflicted by Rampat's family and members of his family's Hindu temple. Only one incident was ever reported to the police who, Rampat testified, viewed it as a family concern. The petitioners proffered no other evidence to bolster their claims that the government was unable or unwilling to control his family or that a minority Christian population was mistreated by a Hindu majority in Trinidad and Tobago. Accordingly, nothing in the record compels reversal of the Board's finding that the petitioners did not meet their burden to demonstrate past persecution or to establish a threat of future persecution, and the Board did not err in affirming the IJ's denial of asylum or withholding of removal. Sheriff, 587 F.3d at 589; Zhang v. Slattery, 55 F.3d 732, 738 (2d Cir. 1995).

The petitioners also failed to demonstrate their eligibility for relief under the CAT. In order to qualify, they needed to demonstrate that it is more likely than not that they will be subjected to severe physical or mental pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim." Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005); see also 8 C.F.R. § 208.18(a) (defining "torture" for the purposes of CAT). They provided no documentary evidence in support of their claim, and the only evidence of country conditions in the record is the State Department's Human Rights Report on Trinidad and Tobago—submitted by DHS—which does not indicate that there are abuses of Christians

5

by Hindus which are so pervasive that Trinidadian officials may be presumed to approve of them. Accordingly, the record supports the BIA's determination that the petitioners did not show that they will more likely than not be tortured upon their return to Trinidad and Tobago, and that they are therefore ineligible for relief under CAT.

IV.

For the reasons we have given, we will dismiss in part and deny in part the petition for review.